## AFFIDAVIT

I, Tracy O'Neal, Senior Special Agent with the Bureau of Alcohol, Tobacco, and Firearms (ATF), United States Department of Justice, having been duly sworn, depose and state that:

### I. INTRODUCTION AND AGENT BACKGROUND

1.      I am a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the U.S. Justice Department, and have been so appointed since April 2004. I am currently assigned to the ATF's Norfolk Field Office and charged with investigating violations of federal firearms, explosives, and arson laws. As part of my employment as an ATF Special Agent I have successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center and the ATF National Academy Special Agent Basic Training Program in Glynco, Georgia. Prior to this appointment I was enrolled in graduate school through Troy State University for approximately two years. While I was attending graduate school, I was working full time at the ATF Norfolk, VA Field Office, enrolled in ATF's Student Employment Program (STEP). I am a 2002 graduate of Radford University, where I received a Bachelor of Science degree in Criminal Justice.

2.      I am a law enforcement officer of the United States empowered by law to conduct investigations and to make arrest for offenses enumerated in 18 U.S.C. § 2516. I have participated in numerous arrests, search warrants, controlled purchases, controlled deliveries of evidence, and complex investigations that involve drug organizations, unlawful possession and/or use of firearms, and persons who have possessed and distributed controlled substances for financial gains while in possession of firearms.

3.      The statements in this affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers/agents.  Because this affidavit is

being submitted for the limited purpose of securing a complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation.

## II. <u>PROBABLE CAUSE</u>

4.      Through my own investigation, and through members of the investigative team, I have learned the following facts:

5.      On May 25, 2024, Virginia Beach Police Department (VBPD) Crime Suppression Unit Officer Gary Cordingley, along with other VBPD officers, conducted surveillance on a memorial service event located at Red Wing Park in the City of Virginia Beach, in the Eastern District of Virginia.  The officers had reason to believe that several known Bounty Hunter Watts gang members would attend the memorial service event.

6.      While conducting surveillance through a camera capable of magnification, Officer Cordingley observed Khyri Jamar Whitehead (WHITEHEAD), who Officer Cordingly knew to be a convicted felon, exit the rear passenger door of a white Toyota Camry operated by B.S., who Officer Cordingly knew to be a leader of the Bounty Hunter Watts gang.

7.      Officer Cordingley observed WHITEHEAD move to the rear of the Toyota Camry, remove a black semi-automatic pistol from the trunk of the vehicle, place the firearm in the front of his waistband, and then conceal the firearm with the shirt he was wearing.

8.      Due to the nature of the surveillance operation that the officers were conducting, and for reasons of officer safety, WHITEHEAD was not immediately detained and searched. Instead, during the duration of the memorial service event, for approximately the next two hours, Officer Cordingly continued to watch WHITEHEAD from the same location.  During that time, Officer Cordingly continued to observe a bulge in the shorts and t-shirt that WHITEHEAD was wearing, in the area where he had placed the firearm.   He also observed WHITEHEAD

2

continuously reaching towards the area where he had placed the firearm, patting his hand in that area, and holding his arm in an unnatural way over the area.

9.      As the memorial service event was ending, Officer Cordingly observed WHITEHEAD return to the parking lot area of the park.  Officer Cordingly observed that WHITEHEAD did not return to the white Toyota Camry that he arrived in, did not remove the firearm from his waistband, and still had a visible bulge in his shorts and t-shirt where he had originally placed the firearm.

10.     Officer Cordingly then observed WHITEHEAD get into the rear passenger seat of a gold Honda Pilot that was being operated by an unknown female.  As the Honda Pilot was exiting the park, Officer Cordingly was able to see and record the license plate number of the vehicle.

11.     Officer Cordingly relayed the vehicle description and the license plate number to the other officers of the surveillance team and VBPD Officer Klepacz conducted a traffic stop of the vehicle on South Birdneck Road in the City of Virginia Beach.

12.     During the traffic stop, as Officer Klepacz was approaching the vehicle, he observed WHITEHEAD in the rear passenger seat bending forward at the waist, reaching down toward the floorboard.

13.     Officer Klepacz approached the rear passenger door and instructed WHITEHEAD to step out of the vehicle.  Officer Klepacz detained WHITEHEAD, conducted a pat down search, but did not locate a firearm on WHITEHEAD's person.

14.     After receiving permission to search the vehicle from the driver, Officer Klepacz recovered a loaded Glock 35, .40 caliber semi-automatic pistol on the floorboard underneath the rear passenger seat, directly beneath where WHITEHEAD had been seated.  He also recovered a cell phone that was in the pocket of the rear passenger door next to where WHITEHEAD had been seated.

15.     VBPD Officer S. Stephens obtained a search warrant for the cell phone that Officer Klepacz recovered from the vehicle and, during a review of the contents of the phone, investigators discovered a photo taken on May 7, 2024, which is a photo of WHITEHEAD holding a unique in appearance Glock handgun that appears to be consistent with the firearm that was recovered from the vehicle on May 25, 2024.

16.     The Glock 35 pistol that was recovered by Officer Klepacz referenced in this affidavit is a firearm as defined in Title 18, United States Code, Section 921(a)(3) and was manufactured outside the Commonwealth of Virginia.  Therefore, the firearm had previously traveled in interstate commerce.

17.     I obtained WHITEHEAD's criminal history and determined that, prior to May 25, 2024, he had multiple prior convictions in the Cities of Virginia Beach and Norfolk Circuit Courts for crimes punishable by imprisonment for a term exceeding one year.

18.     On March 24, 2021, WHITEHEAD was granted restoration of his political rights, to include the right to vote, by the Governor of Virginia.  In the grant order, it specifies that WHITEHEAD has not received restoration of his right to ship, transport, possess, or receive firearms.

19.     Senior Special Agent O'Neal and ATF Task Force Officer Piper contacted the Virginia Beach and Norfolk Circuit Court Clerk's Offices, the sole jurisdictions of each of WHITEHEAD's prior felony convictions and confirmed that WHITEHEAD has not had his right to possess a firearm restored.

### III. CONCLUSION

20.     Based on the foregoing, I submit that there is probable cause to believe that on or about May 25, 2024, in Virginia Beach, in the Eastern District of Virginia, the defendant, KHYRI JAMAR WHITEHEAD, knowing that he had been previously convicted of a crime punishable by

4

a term exceeding one year, did knowingly and intentionally possess a firearm, to wit: a Glock 35, .40 caliber semi-automatic pistol, said firearm having previously been shipped and transported in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

21.    I request that the Court authorize issuance of an arrest warrant for WHITEHEAD for this offense.

Further your affiant sayeth naught.

_____
Tracy O'Neal, Special Agent
Bureau of Alcohol, Tobacco, and Firearms (ATF)

Sworn and subscribed to before me this ____4th____ day of August 2025.

_____
Robert J. Krask, United States Magistrate Judge

Read and Reviewed:

_____
Marc W. West
Special Assistant United States Attorney